A97A1202. THE STATE v. KING.
(489 SE2d 361)

POPE, Presiding Judge.

Alfred King was charged with being a convicted felon in possession of a firearm. The trial court granted his motion to suppress, and the State appeals. Concluding that the court correctly granted the motion, we affirm.

Evidence at the hearing on the motion to suppress was that on December 12, 1995, at about 1:30 a.m., Athens-Clarke County Police Officer Dan Silk noticed King and Warren Collins standing in front of a four-unit apartment complex. The temperature outside on that date was about 20 degrees. Silk testified that the apartment complex was in "an extremely high drug area" in which numerous violent criminal acts had occurred; that the police department received "continuous calls" about the area regarding drug and violent crimes; and

that within the previous month he had made two drug arrests at the spot on which King and Collins were standing. Silk recalled that earlier that evening he had spoken with "a citizen" on the street, who expressed concern about the drug sales transpiring on that block, although there had been no specific complaint about King and Collins. Silk said that a couple of months before this incident, he was involved in a surveillance of the apartment complex and that he had observed that there were "lookouts" for the drug buys at the complex.

Silk did not know King, but he knew that King did not live in the apartment complex. Silk recognized Collins, because Silk and other officers had taken crack cocaine paraphernalia and a knife from Collins several days earlier.

Collins and King stood outside for about an hour; during this time Silk drove by several times. Silk did not observe King or Collins engaging in any criminal conduct. Nevertheless, Silk was suspicious because he believed that it was too cold to be standing outside for an hour, so he stopped his patrol car. Silk and another officer walked up to Collins and King.

Silk testified that he asked King if he was a resident of the address and King said that he was not. Silk asked King what he was doing in the area. Silk testified that he could not recall King's response to this question, but that King's reply was not "substantial enough to me to give me a reason to think that he should be there." Silk then asked King to turn around and raise his hands, so that he could pat him down for weapons. Silk did not ask King for his consent to the pat-down. Although King initially denied carrying any weapons, as Silk began the pat-down, King reached behind himself and stated that he had a pistol in his back pocket. On cross-examination Silk conceded that at the preliminary hearing, he had testified that his initial inquiry to King was whether he had any weapons and that he had followed this question with the pat-down.

Silk admitted that he did not have a specific reason to believe that King was armed. Silk explained that his decision to pat down King for weapons was based on his general awareness that almost "every time we deal with drugs we deal with somebody who is armed or who has a propensity for violence."

The State argues that the trial court erred in granting King's motion to suppress evidence because there was a reasonable articulable suspicion that King had committed or was about to commit a crime, thus allowing the officers to legally stop and question him, and to conduct a weapons pat-down to ensure officer safety.

On appeal of a motion to suppress, "the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is

any evidence to support them." (Citations and punctuation omitted.) *State v. Williams*, 220 Ga. App. 100, 102 (2) (469 SE2d 261) (1996).

"Supreme Court holdings sculpt out, at least theoretically, three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief 'seizures' that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause. Under the first tier, a police officer may approach an individual and ask a few questions without triggering Fourth Amendment scrutiny." (Citations and punctuation omitted.) *Pace v. State*, 219 Ga. App. 583, 585 (466 SE2d 254) (1995); see also *State v. Banks*, 223 Ga. App. 838 (479 SE2d 168) (1996) (physical precedent only). Here, Officer Silk's initial approach to King and his initial inquiry fell under the first level of a police-citizen encounter. Even under the first tier of inquiry, Officer Silk could have responded to any threatening action by "a reasonably tailored protective reaction." *Pace v. State*, 219 Ga. App. at 585. Since King's actions were not threatening, however, Silk's pat-down was not authorized on this basis.

The second tier of encounters occurs when the officer actually conducts a brief investigative *Terry* stop of the citizen. In this level, a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the person is, or is about to be, engaged in criminal activity. *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968); *Postell v. State*, 264 Ga. 249 (443 SE2d 628) (1994). To authorize a *Terry* stop, the officer must possess more than a subjective, unparticularized suspicion or hunch that a person is involved in criminal activity. *Rogers v. State*, 206 Ga. App. 654, 659 (3) (426 SE2d 209) (1992). Moreover, an officer who has lawfully detained a citizen is authorized to conduct a *Terry* pat-down for weapons only if the officer has a reasonable belief preparatory to the pat-down that the suspect is armed and presents a danger to the officer or others. *Brown v. State*, 181 Ga. App. 768, 770 (1) (a) (353 SE2d 572) (1987).

Here, Officer Silk's pat-down of King for weapons was not authorized. First, Silk had no particularized and objective basis, as required for a *Terry* stop, for suspecting that King was, or was about to be, involved in criminal activity.[1] More importantly, Silk had no reasonable belief that King was armed and represented a danger to himself or to others, so as to justify the pat-down. Compare *Hodges v.*

---

[1] We note that our decision here is limited to King; we make no determination regarding what detention of Collins the police officers could have undertaken.

*State*, 217 Ga. App. 806, 808 (2) (460 SE2d 89) (1995). Silk's mere hunch that King was involved with drugs and that drugs were usually linked to violence did not justify the pat-down.[2] Accordingly, the court's grant of the motion was not clearly erroneous.

Contrary to the State's arguments, we find *Wilson v. State*, 210 Ga. App. 886 (437 SE2d 867) (1993); *Dowdy v. State*, 209 Ga. App. 311, 312 (433 SE2d 293) (1993); *Foster v. State*, 208 Ga. App. 699 (1) (431 SE2d 400) (1993), and *Chaney v. State*, 207 Ga. App. 72 (427 SE2d 63) (1993), distinguishable.

*Judgment affirmed. Johnson and Blackburn, JJ., concur.*

DECIDED JULY 16, 1997.

*Harry N. Gordon, District Attorney, John A. Pursley, Assistant District Attorney*, for appellant.

*John W. Donnelly*, for appellee.

---

[2] We are mindful that in appropriate circumstances "[i]t is not unreasonable for officers to anticipate that those who are suspected of involvement in the drug trade might be armed." *Condon v. State*, 203 Ga. App. 163 (416 SE2d 802) (1992).