## A03A1705. THE STATE v. McKINNEY.
### (593 SE2d 865)

SMITH, Chief Judge.

The State appeals from the trial court's order granting Dwayne Calvin McKinney's motion to suppress. The trial court correctly concluded that the officer's initial contact with McKinney was a proper "first tier level interaction," but it erred in concluding that the officer did not thereafter have a reasonable articulable suspicion to conduct a limited pat-down search for weapons. We therefore reverse.

> While the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.

(Citations omitted.) *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994). Here, the facts are not in dispute. On the evening in question, the arresting officer was on patrol in a high-crime area of DeKalb County, serving on a special detail "to try to deter the criminal acts in that particular area." The officer was in the parking lot of a motel known as a haven for criminal activity; he had made arrests for drugs and weapons at this motel and had observed other officers making arrests for drugs, prostitution, and stolen vehicles. The motel owners had requested that the police patrol the area and had posted a "no loitering" sign in front of the motel. The motel is surrounded by a fence and a vehicle gate that must be opened by a motel employee or access card but does not obstruct foot traffic.

After the officer's patrol car was let through the gate by an employee, he drove through a dimly lit portion of the parking lot in the rear of the motel, adjacent to a wooded area. There were few cars parked in that area and no people on foot with the exception of McKinney and a companion. The officer saw them standing at the corner of the building, but as he rounded the corner they started walking. The officer slowed his patrol car and asked the two men

what was going on. They responded that they were looking for a friend. The officer asked them for the friend's name and room number, but they were unable to tell him. He then asked if they had a room at the motel, and they responded that they did not. At that point, suspecting that the men were involved in illegal activity, the officer stepped out of his patrol car and asked the men for their identification. McKinney's companion provided identification, but McKinney did not. The officer then told them

> while I'm out here standing here talking to you I'm going to ask you guys if you were out here for drugs, ask if you have any drugs on your person or any weapons on your person. When I asked these three questions [McKinney's companion] replied no, no, no. Mr. McKinney, he didn't answer. He just stood there staring at me with a blank stare.

Based on his experience and training, the officer concluded from this that McKinney was "possibly armed." For his and their safety he conducted a limited over-the-clothing pat-down. The pat-down revealed a bulge in McKinney's right front trouser pocket that the officer recognized by feel as the cylinder and barrel of a revolver. McKinney was placed under arrest for carrying a concealed weapon; a search incident to his arrest produced two small bags of a green leafy substance believed to be marijuana.

McKinney sought suppression of this evidence on the grounds that the officer lacked an articulable, reasonable suspicion to make an investigatory stop and detained and searched him without probable cause. The State argued that the officer was authorized to speak to the two men, that they voluntarily responded, and that the totality of the circumstances including McKinney's response to further questions justified the officer in conducting a pat-down for his safety.

> At least three types of police-citizen encounters exist: verbal communications involving no coercion or detention; brief "stops" or "seizures" that require reasonable suspicion; and "arrests," which can only be supported by probable cause. A first-tier encounter never intrudes upon any constitutionally protected interest, since the purpose of the Fourth Amendment is not to eliminate all contact between police and citizens, but simply to prevent arbitrary and oppressive police interference with the privacy and personal security of individual citizens. On the other hand, a second-tier encounter may violate the Fourth Amendment if the officer briefly "stops" or "seizes" a citizen without an articulable suspicion. Articulable suspicion requires a particularized and objective

basis for suspecting that a citizen is involved in criminal activity.

(Citations omitted.) *Brittian v. State*, 257 Ga. App. 729, 731 (572 SE2d 76) (2002).

The trial court erred in relying on *State v. King*, 227 Ga. App. 466 (489 SE2d 361) (1997), in granting the motion to suppress. The facts in *King* are indeed somewhat similar to those presented here: a police officer stopped and questioned two men loitering in a high-crime area known for drug sales. But in *King*, the officer could not recall the men's responses to his questions regarding the reason for their presence, other than to surmise that "King's reply was not 'substantial enough to me to give me a reason to think that he should be there.'" Id. at 467. The officer also "admitted that he did not have a specific reason to believe that King was armed." Id. We concluded that the officer had no particularized objective basis to suspect King's involvement in criminal activity, that he had no reasonable belief that King was armed, and that a "mere hunch" that King was involved with drugs did not justify a pat-down search. Id. at 468-469.

In contrast, McKinney and his companion were not standing on a public sidewalk, as appears to be the case in *King*, but in a remote, poorly lit area of a parking lot in the rear of a fenced private property posted against loitering. The officer testified in detail to his inquiries and the men's responses and explained why their answers led him to believe that they were involved in criminal activity. In addition, he described McKinney's unusual reaction to his question regarding whether he had a gun on his person and testified to his belief, based on his experience and training, that McKinney's reaction indicated he was "possibly armed." We specifically acknowledged in *King* that "[e]ven under the first tier of inquiry, [the officer] could have responded to any threatening action by 'a reasonably tailored protective reaction.'" (Citation omitted.) Id. at 468.

> In order for an officer to protect himself from injury, there need not first be established a reasonable, articulable suspicion that the person who is being lawfully questioned has committed or is committing a crime. The risk of injury justifies reasonably tailored protective reaction to a citizen's threatening action even in "tier-one" investigative encounters. Were it not so, the cost would be too high for such encounters. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. Whether a limited protective search of the person is justified requires a reasonable belief that the officer's safety or that of others is in danger. . . . The ques-

tion is whether a reasonably prudent person in the circumstances would be warranted in the belief that his safety or that of others was in danger. The officer was able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous.

(Citations and punctuation omitted.) *Pace v. State*, 219 Ga. App. 583, 585-586 (466 SE2d 254) (1995). Here, the officer pointed to the particular facts that led him to believe McKinney was probably carrying a gun and testified that he carried out a limited pat-down to ensure his own safety and that of McKinney and his companion. The trial court therefore erred in granting McKinney's motion to suppress.

*Judgment reversed. Ruffin, P. J., and Miller, J., concur.*

DECIDED JANUARY 28, 2004.

*Gwendolyn R. Keyes, Solicitor-General, Jennifer E. Stolarski, Assistant Solicitor-General*, for appellant.
*Priya N. Lakhi*, for appellee.