A05A0138. THE STATE v. BROWN.
(614 SE2d 250)

SMITH, Presiding Judge.

After Zachtarius Brown was arrested and charged by accusation with possession of cocaine, he filed a motion to suppress, which was granted after a hearing. The State appeals from that ruling, and we reverse.

1. Brown moves to dismiss the State's appeal on the ground that no application for interlocutory appeal was filed. OCGA § 5-7-1 (a) (4) specifically permits the State to file a direct appeal after the grant of a motion to suppress evidence illegally obtained, if the motion was ruled on before jeopardy attached. Since that was the case here, the State was authorized to bring this direct appeal. *State v. Kramer*, 260 Ga. App. 546, 547 (1) (580 SE2d 314) (2003) (physical precedent only); *State v. Pastorini*, 226 Ga. App. 260 (486 SE2d 399) (1997). Brown's motion to dismiss is therefore denied.

2. The State contends the trial court erred in granting Brown's motion to suppress. We agree.

---

[25] *Brantley v. State*, 271 Ga. App. 733, 736 (1) (611 SE2d 71) (2005) (citations and punctuation omitted).

The evidence presented at the hearing on the motion to suppress showed that Officer Brian Stokes, of the Laurens County Sheriff's Department, and several other officers went to Brown's home in the late afternoon of June 18, 2002. They were seeking Ronnie Horne, for whom they had an arrest warrant on federal drug charges. They knocked on the door and were admitted by Brown, who told them Horne was not there. The officers immediately smelled a "strong odor of burning marijuana," and they asked if they could search Brown's home for drugs. Brown consented, and the officers searched but did not find any drugs.[1] Under a couch, however, they did find a gun Brown told them "somebody had pawned to him." The serial number was checked, and the gun was not stolen or otherwise wanted.

In the early morning hours of the next day, the officers were still looking for Horne when they encountered Brown walking down the road. They asked him where he was going, and Brown replied he was walking to his sister's house. The officers had information that Brown knew where Horne was, and, thinking that Horne might be at Brown's sister's home, they offered Brown a ride in their unmarked car. Brown accepted the offer. Before Brown was allowed to enter the officers' car, the officers patted him down for their own safety, because Brown was known to deal drugs and "drug dealers often carry weapons." Although they found no weapons, they did find approximately $1,800 in currency on Brown's person. They then drove to the home of Brown's sister, discovered that no one was home, and returned Brown to his residence.

The officers again asked Brown if they could search the house for drugs and for Horne, and Brown consented again. This time, a plastic baggie containing "several rocks" of cocaine was found in a box in a closet,[2] and Brown was arrested and charged.

Ruling on Brown's motion to suppress, the trial court concluded that "when the officers conducted a *Terry* pat-down before Brown entered the unmarked police vehicle the officers were exercising a form of detention." Reasoning that no articulable suspicion existed for the pat-down, the trial court found that the detention was unlawful. Finding also that "the totality of the circumstances [does] not show a free and voluntary consent to search," the trial court granted Brown's motion to suppress. The facts are not disputed, and therefore "the trial court's application of the law to undisputed facts is subject to de novo appellate review." (Citations and punctuation omitted.) *Silva v. State*, 278 Ga. 506, 507 (604 SE2d 171) (2004).

---

[1] Brown told the officers he had smoked marijuana earlier.

[2] An undisclosed number of pills were found in a freezer.

(a) We note initially that under the facts presented here, no "stop" occurred within the meaning of *Terry*, and therefore no articulable suspicion was required. "Not all encounters between police officers and citizens involve seizures which implicate Fourth Amendment protections. Even when officers have no basis for suspecting a particular individual, they may generally ask questions . . . as long as the police do not convey a message that compliance with their requests is required." (Citations and punctuation omitted.) *Quinn v. State*, 268 Ga. 70, 72 (485 SE2d 483) (1997).

The officers had no reason to arrest or stop Brown. They "just happened to bump into" Brown by chance on a public street. The officers were on their way to a certain street, having received information that Horne was staying in an apartment on that street. Brown told the officers he was walking to his sister's house, which was on the same street. Because Horne and Brown were friends, the officers thought it possible that Horne might actually be at Brown's sister's house. The officers asked Brown if he wanted a ride, and Brown accepted the offer voluntarily. An officer testified that no threats or force were used. No articulable suspicion was required because no brief seizure occurred within the meaning of *Terry*.

(b) "In this state, a *Terry* pat-down search is authorized when the officer reasonably believes that it is necessary to protect him from attack." (Citations and punctuation omitted.) *Williams v. State*, 265 Ga. App. 489, 490 (594 SE2d 704) (2004). "Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." (Citations and punctuation omitted.) *State v. McKinney*, 265 Ga. App. 322, 324 (593 SE2d 865) (2004). Brown was not handcuffed during his ride in a "regular," unmarked car, and he was not under arrest. In fact, during the pat-down officers discovered a large amount of currency on Brown's person, which an officer testified was "probably" returned to him.

It was entirely reasonable for the officers to pat down Brown for weapons. A gun had been discovered under a couch in Brown's home, and it was not confiscated. An officer testified that Brown was patted down before he was permitted to enter the police car "[b]ecause Mr. Brown is a known drug dealer and drug dealers often carry weapons and for our safety I was going to check him for weapons." The pat-down was lawful.

(c) As to the search that revealed the drugs, when contraband is seized in a warrantless search and the State relies upon consent, "[i]n order to eliminate any taint . . . , there must be proof both that the consent was voluntary and that it was not the product of an illegal detention." (Citations and punctuation omitted.) *State v. Jones*, 269 Ga. App. 325, 326 (604 SE2d 228) (2004). To justify such a search, "the

State must prove that the consent was voluntary under the totality of the circumstances." (Citations omitted.) Id. at 327.

The State presented evidence that on the officers' first search of Brown's home, they were looking for Horne and did not suspect Brown of committing a crime. They found no drugs and continued their search for Horne. As to their second visit, the State presented an officer's testimony showing that they did not threaten or coerce Brown into allowing a search. Brown was described as "a very smart guy" who was "not under the influence of any alcohol or anything." According to the officer's testimony, Brown "let us search the first time freely, let us search the second time freely." Brown did not testify at the hearing and did not present any other evidence. Nothing contradicted the State's evidence that Brown consented freely. Under the totality of the circumstances, including the search for Horne and the fact that the officers returned Brown's gun and cash, we conclude that consent was freely and voluntarily given. The trial court's grant of the motion to suppress must be reversed.

*Judgment reversed. Ellington and Adams, JJ., concur.*

DECIDED MAY 3, 2005.

*Ralph M. Walke, District Attorney, Joseph L. Chambers, Assistant District Attorney*, for appellant.
*George C. Tapley*, for appellee.