## A09A2172. MEADOWS v. THE STATE.
(692 SE2d 708)

DOYLE, Judge.

A Chattahoochee County jury found Dwayne Meadows guilty of felony obstruction,[1] misdemeanor obstruction,[2] misdemeanor escape,[3] and two counts of terroristic threats.[4] On appeal, Meadows contends that the trial court erred in denying his motion for a directed verdict of acquittal on the charges of felony obstruction, misdemeanor obstruction, and escape. Finding that the evidence was sufficient to support the jury's verdict as to felony and misdemeanor obstruction, we affirm. However, Meadows's conduct of resisting the lawful patdown and leaving the scene is insufficient to support a conviction for escape.

Viewed in a light most favorable to the jury's verdict,[5] the evidence shows that a concerned citizen called 911 to report that a man had been firing a gun and was on Highway 26. The information was relayed to Sheriff Glenn Cooper and Chief Deputy Ronald Hoard, who were advised to be on the lookout for a black male dressed in dark clothing and carrying a plastic bag. The sheriff drove to Highway 26, where he and the chief recognized Meadows, with whom they were familiar, walking down the road and carrying a plastic bag.

The chief asked Meadows what was going on. Meadows, who was sweating and upset, responded that he had broken up with his girlfriend, and that "I'm fed up with all this God damn f___ing

---

[1] OCGA § 16-10-24 (b).

[2] OCGA § 16-10-24 (a).

[3] OCGA § 16-10-52 (a) (2).

[4] OCGA § 16-11-37 (a).

[5] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

bull___ between me and my girlfriend." The Chief exited the car and "charged him at that time for disorderly conduct . . . and asked him if I could search." Because the chief had received information about a gun, he placed Meadows against the car, searched his bag, and then began to pat Meadows down for weapons. Meadows elbowed the chief before he could complete the pat-down, causing the chief to lose his balance. Meadows ran away into the woods and then out of sight of the chief, who tried to follow as the sheriff fired a warning shot into the air.

A Georgia State Patrol officer who had also responded to the 911 call encountered Meadows a few minutes later as he walked down an embankment onto the highway. Meadows stopped and complied with the patrolman's request to come to the patrol car, where the officer checked Meadows for weapons. The sheriff and the chief came to take Meadows into custody, and they transported him to the sheriff's office. When they arrived, Meadows refused to go into the holding cell and "braced himself" to avoid going in, and the chief had to physically place him in the cell.

After completing the necessary paperwork, Chattahoochee County officers transported Meadows to the Muscogee County jail. During the process of delivering Meadows to Muscogee County, Meadows informed the chief that "I'm going to come back and kill all of y'all." According to another officer, Meadows told the officer, the chief, the sheriff, and the radio operator that "he was going to get a 7.62 . . . and come back down here and kill everybody."

Meadows's shirt subsequently tested positive for gunshot residue. Deputies also found a 9 millimeter shell casing on a hill near Meadows's girlfriend's house, and a firearm near the wooded area where Meadows had fled from the chief. A firearms expert opined that the casing was fired from that gun.

Meadows contends that the trial court erred in denying his motion for a directed verdict of acquittal on felony obstruction, misdemeanor obstruction, and escape. He argues that the State failed to establish a prima facie case on these counts because he was unlawfully arrested for the crime of disorderly conduct. It follows, he contends, that the officers were not acting in the lawful discharge of their official duties for purposes of the obstruction charges, nor was he placed in lawful custody for purposes of the crime of escape. "The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction."[6]

1. "Whoever knowingly and willfully resists, obstructs, or op-

---

[6] *Hester v. State*, 282 Ga. 239, 240 (2) (647 SE2d 60) (2007).

42

poses any law enforcement officer . . . in the lawful discharge of his official duties by offering or doing violence to the person of such officer . . . is guilty of a felony. . . .'"[7] As a rule, a police officer does not discharge "his lawful duty when he arrests an individual without reasonable or probable cause."[8] Although we agree that the chief did not have probable cause to arrest Meadows for disorderly conduct,[9] an officer may conduct a pat-down search of a person whom he "reasonably believes . . . to be armed or otherwise dangerous to the officer or others."[10] "A reasonable search for weapons for the protection of the police officer[ ] is permitted where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime."[11] Not only did Meadows match the concerned citizen's specific description and location of a man who had been shooting a gun, he also had threatened to kill the sheriff (who was physically present during the encounter) on as many as six previous occasions. Viewed objectively,[12] the officers had reasonable suspicion to detain Meadows to investigate[13] the report that he had been shooting a weapon, and they had reason to believe he was carrying a gun and that he was dangerous. Meadows also acknowledged on cross-examination that he had authorized the search of his person by law

---

[7] OCGA § 16-10-24 (b).

[8] (Punctuation omitted.) *Wynn v. State*, 236 Ga. App. 98, 99 (2) (511 SE2d 201) (1999).

[9] On cross-examination, the chief admitted that during the encounter the only person Meadows was cursing about was his girlfriend and that Meadows was not acting violently toward any other person or another person's property. Compare OCGA § 16-11-39 (a) (1), (2), (3). According to the chief, he charged Meadows with disorderly conduct because he did not want to hear "the abusive language [Meadows] was using." However, "State law no longer criminalizes the use of unprovoked language threatening an immediate breach of peace, which is obscene, vulgar, or profane, that is directed to a person older than 14 years of age, unless such language also constitutes 'fighting words.' " *Lundgren v. State*, 238 Ga. App. 425, 427 (518 SE2d 908) (1999). See also *Wood v. Haynes*, 148 Ga. App. 640, 641 (2) (252 SE2d 69) (1979) (no disorderly conduct where defendant, following an altercation with his girlfriend, uttered opprobrious words in the presence of only the arresting officer).

[10] (Punctuation omitted.) *Walker v. State*, 235 Ga. App. 91, 92 (508 SE2d 465) (1998).

[11] (Punctuation omitted.) *Debord v. State*, 276 Ga. App. 110, 112 (622 SE2d 460) (2005).

[12] See *State v. Sparks*, 205 Ga. App. 438, 440 (422 SE2d 293) (1992) (whether warrantless arrest was valid is viewed under an objective standard "rather than to the characterization or basis for behavior stated by the officer"). Compare *Brooks v. State*, 206 Ga. App. 485, 489 (2) (425 SE2d 911) (1992) (applying objective standard, "[a]s the police lacked probable cause *or articulable suspicion* such as would have authorized the seizure, defendant was entitled to resist the unlawful arrest") (emphasis supplied).

[13] The officers' actions were also more consistent with an investigatory detention than a full-blown arrest. The chief "asked [Meadows] if I could search" before searching Meadows's bag for a weapon, and he conducted a "pat down" search of Meadows's pockets. It does not appear that Meadows was either handcuffed or placed in the police vehicle. Compare *State v. Dukes*, 279 Ga. App. 247, 250-251 (630 SE2d 847) (2006) (defendant's permissible flight from first-tier encounter with police followed by full-blown arrest and not an investigatory detention did not constitute obstruction).

enforcement officers at any time as a condition of probation following his guilty plea to a previous crime.[14] Accordingly, we conclude that the chief was performing his official duty when he searched Meadows for weapons.[15] The jury could find that when Meadows elbowed the chief in course of the pat-down, he committed felony obstruction.[16]

Even if the pat-down is considered to be an integral part of an unlawful arrest such that, under Georgia law, Meadows was entitled to resist,[17]

> an arrestee is never justified in assaulting an arresting officer unless the officer has assaulted him first. In this case, no evidence showed that the arresting officer assaulted [Meadows] first. The fact that [Meadows] struck the officer was sufficient to present a jury question on the obstruction charge.[18]

Accordingly, we find that any rational trier of fact could have found Meadows guilty beyond a reasonable doubt of felony obstruction.

2. The evidence shows that Meadows refused to obey officers when they ordered him to enter the detention cell and resisted to the extent that he had to be physically placed inside. This was sufficient to support Meadows's conviction for misdemeanor obstruction.[19]

3. Finally, the evidence was insufficient for any rational trier of fact to find beyond a reasonable doubt that Meadows was guilty of the crime of misdemeanor escape. As applicable here, a person commits the crime of escape when he, "[b]eing in lawful custody or lawful confinement prior to conviction, intentionally escapes from

---

[14] See *Prince v. State*, 299 Ga. App. 164, 169 (3) (b) (682 SE2d 180) (2009) (police may search probationer pursuant to waiver of fourth amendment rights so long as there exists a reasonable or good faith suspicion for the search). The record shows that Meadows was sentenced to five years probation on April 25, 2007, in connection with the earlier crime.

[15] See *Johnson v. State*, 289 Ga. App. 27, 29-30 (656 SE2d 161) (2007) (during traffic stop, officers were justified in patting suspect down for weapons).

[16] See, e.g., *Cobble v. State*, 297 Ga. App. 423, 424 (1) (677 SE2d 439) (2009) (act of kicking officers who were trying to place defendant in a holding cell was sufficient to constitute felony obstruction).

[17] See *Brooks*, 206 Ga. App. at 489 (2) (defendant was entitled to resist unlawful arrest). Here, Meadows testified that he "didn't see [the chief] having probable cause," and having made this independent assessment, left the encounter as the sheriff, who Meadows claims fired several rounds, "tr[ied] to shoot me." As to the right to resist an illegal arrest in this state, we have previously noted that "other jurisdictions have adopted a different rule." *State v. Ealum*, 283 Ga. App. 799, 805, n. 6 (643 SE2d 262) (2007).

[18] (Citation and punctuation omitted.) *Dudley v. State*, 264 Ga. App. 845, 846 (1) (b) (592 SE2d 489) (2003).

[19] See *Mackey v. State*, 296 Ga. App. 675, 679 (3) (675 SE2d 567) (2009) (evidence that defendant struggled with officers at the jail sufficient to support obstruction conviction).

such custody or confinement."[20]

"The test for determining whether a person is 'in custody' at a traffic stop is if a reasonable person in the suspect's position would have thought the detention would not be temporary."[21] We have previously applied this test in determining custody for purposes of the crime of escape.[22] As Meadows was not lawfully arrested for disorderly conduct, Meadows was not placed in lawful custody when the chief informed him that he was under arrest for that crime.[23] And although Meadows committed obstruction in resisting the chief's pat-down, the evidence does not support the conclusion that he had therefore been in "lawful custody or lawful confinement" when he fled the scene. Rather, the lawful actions of the officers had not proceeded beyond a brief investigatory detention in which Meadows was not handcuffed, confined, or transported, and a reasonable person would not have been apprised thereby that the detention was not temporary.[24]

*Judgment affirmed in part and reversed in part. Blackburn, P. J., and Adams, J., concur.*

DECIDED MARCH 23, 2010.

*W. John Wilson*, for appellant.
*Julia F. Slater, District Attorney, William D. Kelly, Jr., Assistant District Attorney*, for appellee.

---

[20] OCGA § 16-10-52 (a) (2).

[21] *Hughes v. State*, 259 Ga. 227, 228 (1) (378 SE2d 853) (1989).

[22] See *Truax v. State*, 207 Ga. App. 506, 508 (2) (428 SE2d 611) (1993).

[23] Since Georgia law allows a person to resist an illegal arrest, it does not treat flight to avoid an illegal arrest as a crime. See *Thomas v. State*, 91 Ga. 204, 206 (2) (18 SE 305) (1892) ("Every man, however guilty, has a right to shun an illegal arrest by flight. The exercise of this right should not, and would not, subject him to be arrested as a fugitive."). See *Scott v. State*, 123 Ga. App. 675, 676 (4) (a) (182 SE2d 183) (1971).

[24] See *Gaines v. State*, 297 Ga. App. 629, 630 (678 SE2d 99) (2009) (suspect "was not handcuffed, secured in the back of a police vehicle, or treated in any manner which would raise this investigative stop to the level of an arrest") (punctuation omitted). Compare *Truax*, 207 Ga. App. at 508 (2) (evidence was sufficient to prove crime of escape where suspect was placed in police vehicle, transported to the police station, and told to wait by the officer, and then left the station).