### A10A1669. LEWIS v. THE STATE.
(705 SE2d 693)

BARNES, Presiding Judge.

Following a stipulated bench trial, Chris Lewis was convicted of possession of a firearm by a convicted felon, loitering and prowling, and carrying a concealed weapon. Lewis appeals from the denial of his motion for a new trial, contending that the trial court erred in denying his motion to suppress the firearm seized from his person. For the reasons set forth below, we affirm.

> In reviewing the grant or denial of a motion to suppress, we construe the evidence in a light most favorable to upholding the trial court's findings and judgment. When the trial court's findings are based upon conflicting evidence, we will not disturb the lower court's ruling if there is any evidence to support its findings, and we accept that court's credibility assessments unless clearly erroneous.

(Citation omitted.) *Sommese v. State*, 299 Ga. App. 664, 665 (683 SE2d 642) (2009).

So viewed, the record reflects that two officers with the Cobb County Police Department were patrolling in a high-crime area known for armed robberies. Around 11:30 p.m., they observed Lewis alone in the parking lot of a convenience store near the gas pumps. The store was closed and the lights at the gas pumps were off, but the light was still on inside the store such that the manager could be seen preparing to leave. The officers knew that this particular store had been robbed numerous times during closing.

The officers observed Lewis walk away from the gas pumps to the edge of the unlit parking lot, then remain there while looking

toward the inside of the store where the manager was getting ready to turn off the store lights. The officers drove into the parking lot in their marked patrol car, and Lewis began to walk away from the car but returned when the officers spoke to him. In response to the officers' questions, Lewis, who appeared extremely nervous, said that he was walking to a nearby bus stop. The officers did not accept Lewis's explanation and concluded that "[h]e didn't belong in the area." According to one of the officers who had been assigned to that patrol zone for approximately one year, people did not normally cross the store parking lot at that time of night to reach the bus stop.

Concerned that Lewis might be armed, the officers patted Lewis down for weapons. Lewis was wearing baggy pants, and the officers initially felt nothing suspicious. The second officer, however, noticed that Lewis turned his body away while the first officer patted down the front of his clothing. When the first officer subsequently returned to the patrol car to check Lewis's license and for outstanding warrants, the second officer continued to observe Lewis, who still appeared extremely nervous and was looking around and grabbing the right front pocket of his pants. Believing that Lewis kept grabbing his pocket to readjust a weapon, the second officer performed a second pat-down of Lewis's right front pocket. As soon as the second officer touched the outside of Lewis's pocket, he felt a firearm and took Lewis into custody. The entire encounter lasted only a few minutes.

On appeal, Lewis contends that the first pat-down of his person by the officers was unconstitutional because the officers could not point to any specific articulable facts from which they could have inferred that he was armed and dangerous. Lewis further contends that the firearm recovered during the second pat-down was fruit of the poisonous tree that should not have been admitted as evidence by the trial court. We disagree.

"The Fourth Amendment protects a person's right to be secure against unreasonable searches and seizures." (Citation and punctuation omitted.) *Davis v. State*, 303 Ga. App. 785, 786 (694 SE2d 696) (2010). When a defendant raises a Fourth Amendment claim, we must be mindful that

> [t]here are three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause.

(Citations and punctuation omitted.) *McClain v. State*, 226 Ga. App. 714, 716 (1) (487 SE2d 471) (1997). In a second-tier encounter,

known as a *Terry* stop, "a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity." (Citation and punctuation omitted.) Id. See *Terry v. Ohio*, 392 U. S. 1, 21 (III) (88 SC 1868, 20 LE2d 889) (1968). The parties agree that the present case involved a second-tier encounter, and Lewis does not dispute that the officers had a particularized and objective basis for stopping and briefly detaining him in the parking lot.

In the context of a second-tier encounter,

> an officer may conduct a pat-down search of a person whom he reasonably believes to be armed or otherwise dangerous to the officer or others. A reasonable search for weapons for the protection of the police officer is permitted where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime.

(Punctuation and footnotes omitted.) *Meadows v. State*, 303 Ga. App. 40, 42 (1) (692 SE2d 708) (2010). See *Terry*, 392 U. S. at 27 (III). The officer's belief that the individual is armed and dangerous cannot be predicated upon a mere suspicion or hunch; rather, the officer "must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." (Citation omitted.) *Molina v. State*, 304 Ga. App. 93, 95 (695 SE2d 656) (2010). The critical question that must be asked "is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U. S. at 27 (III). The burden is on the State to prove the lawfulness of a pat-down search for weapons. See *Molina*, 304 Ga. App. at 95.

The State met its burden in this case. The initial pat-down of Lewis was supported by the following combined, particularized facts observed by the officers: the presence of Lewis late at night in a high-crime area known for armed robberies; his proximity to a closed convenience store that had been robbed on numerous occasions during closing; Lewis's observation of the store manager in the process of closing the store while standing in an unlit parking lot; his extreme nervousness; his wearing of baggy clothing in which a weapon could be easily concealed; the inadequacy of his explanation to the officers for his presence outside the store; and his initial fleeing from the officers when they pulled into the parking lot. These actions of Lewis were consistent with the officers' hypothesis that Lewis was contemplating a robbery of the store manager, "which, it is reasonable to assume, would be likely to involve the use of

weapons." *Terry*, 392 U. S. at 28 (IV). As such, the trial court was authorized to find that a reasonably prudent person under these circumstances would have been warranted in believing that Lewis posed a danger to his or her safety, such that the officers' act of conducting the initial pat-down search for a weapon was constitutionally permissible. See, e.g., id. (defendant and his companion's suspicious behavior indicating that they were casing out store in "preface to a 'stick-up' " authorized pat-down search for weapons); *Woods v. State*, 275 Ga. App. 340, 344 (1) (b) (620 SE2d 609) (2005) (defendant's peering into parked car in mall parking lot where there had been a rash of vehicle break-ins, combined with inadequacy of his explanation to police for his suspicious conduct, authorized pat-down search for weapons); *State v. McKinney*, 265 Ga. App. 322, 323-325 (593 SE2d 865) (2004) (defendant and companion's loitering in poorly lit area of parking lot outside motel that was known as haven for criminal activity, combined with the fact that they initially walked away upon officer's approach and their suspicious responses to officer's questions, authorized pat-down search for weapons).

Lewis, however, emphasizes that he provided the officers an innocent explanation for his presence, namely, that he was on the way to the bus stop, and he claims that his explanation should have dispelled any fears that the officers might have had for their safety. We are unpersuaded. One of the officers knew from his experience in that patrol zone that people did not normally cross the store parking lot at that time of night to reach the bus stop, and Lewis had been observed standing in the unlit parking lot, facing the convenience store, and watching the store manager during closing — conduct inconsistent with Lewis's explanation. The officers were not required to stake their safety on Lewis's explanation rather than upon their own determination of whether Lewis was armed. See *In the Interest of A. T.*, 302 Ga. App. 713, 716 (2) (b) (691 SE2d 642) (2010); *Hayes v. State*, 202 Ga. App. 204, 205 (414 SE2d 321) (1991).

Lewis also relies heavily upon *State v. King*, 227 Ga. App. 466 (489 SE2d 361) (1997), but that case is clearly distinguishable. In *King*, the officer patted down the defendant after observing him and a companion standing on a public sidewalk, late at night, in front of an apartment complex located in a "high drug area." Id. at 466. The officer testified that he patted down the defendant based upon his "general awareness" that drug activity often involved people who were armed or who had a propensity for violence. Id. at 467. Affirming the trial court's grant of the defendant's motion to suppress, we concluded that the trial court was entitled to find that the officer had no reason to suspect that the defendant was involved in criminal activity or that he was armed. Id. at 468-469.

In contrast to *King*, Lewis was standing in an unlit area looking into a closed business in a manner that suggested he was preparing to commit a robbery, not merely standing outside a residential apartment complex. See *McKinney*, 265 Ga. App. at 324 (distinguishing *King* on the ground that, in that case, the defendant and his companion were simply "standing on a public sidewalk" and the arresting officer "did not have a specific reason to believe that [the defendant] was armed") (citation and punctuation omitted); *Dickson v. State*, 241 Ga. App. 575, 576-577 (527 SE2d 246) (1999) (distinguishing *King* on the ground that the "arresting officer . . . did not observe any suspicious actions," given that "[t]he defendant had merely been standing outside late at night with another individual in an area known for drugs"). Furthermore, the issue in *King* was whether to affirm the trial court's *grant* of the defendant's motion to suppress. Therefore, the standard of review on appeal favored the trial court's suppression. See *Sommese*, 299 Ga. App. at 665 (explaining standard of review). In contrast, the standard of review in the present appeal favors the trial court's *denial* of suppression. See id. See also *Dickson*, 241 Ga. App. at 576 (distinguishing *King* on the basis that the Court of Appeals in that case was reviewing the trial court's grant of a motion to suppress rather than its denial of a motion to suppress). Accordingly, *King* is simply inapposite.

For these reasons, the officers conducting the initial pat-down of Lewis acted in accordance with the Fourth Amendment, and so there was no taint upon the second pat-down leading to seizure of the firearm.[1] It follows that the trial court committed no error in denying Lewis's motion to suppress the firearm seized from his person and in relying upon that evidence to convict Lewis of the charged offenses.

*Judgment affirmed. Blackwell and Dillard, JJ., concur.*

DECIDED JANUARY 21, 2011.

*Stephen R. Scarborough*, for appellant.
*Patrick H. Head, District Attorney, John R. Edwards, Albert T. Reeves, Assistant District Attorneys*, for appellee.

---

[1] We note that the constitutionality of the second pat-down of Lewis's person was further supported by the second officer's observation of Lewis's evasive action during the first pat-down and Lewis's repeated grabbing of his right front pocket. See, e.g., *Louis v. State*, 196 Ga. App. 276, 277 (1) (396 SE2d 25) (1990) (upholding pat-down search where "defendant was seen reaching for his crotch (where weapons are often hidden) and turning his back to the officers").