## A00A1686. THE STATE v. CAUSEY.
## A00A1687. STATE OF GEORGIA v. CAUSEY.
### (540 SE2d 696)

BLACKBURN, Presiding Judge.

In Case No. A00A1686, the State appeals the trial court's order granting Aaron Decarlis Causey's motion to suppress the evidence, and in Case No. A00A1687, the State appeals the trial court's order denying its complaint for forfeiture of $3,477 seized from Causey. Both the criminal case and the civil forfeiture case are based on the same transaction in which the trial court determined that the arresting officers lacked sufficient articulable suspicion to justify their stop of Causey. For the reasons set forth below, we reverse the trial court's grant of Causey's motion to suppress and the denial of the State's forfeiture complaint.

### Case No. A00A1686

1. The State appeals the trial court's grant of appellee's motion to suppress, and on appeal the evidence must be construed most favora-

---

bly to support the trial court's ruling. See *Parker v. State*.[1] "[W]here the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review." *Vansant v. State*.[2]

The record shows that, at approximately 8:00 p.m. on February 26, 1999, Marietta Police Officers Mark Bishop and Danny Messimer, while off duty, were working as security personnel at Dave & Buster's, monitoring the parking lot. There had been a history of cars being broken into in this parking lot. The officers noticed an unknown man, later identified as Carlos Blount, enter the parking lot on foot from an adjacent hotel. Blount appeared to wander around the lot, walking between the parked cars and stopping to look into some of the cars before standing up and looking around. Based on Blount's questionable behavior coupled with a history of car break-ins in the lot, including a theft on the previous night, Officer Bishop became suspicious that Blount was attempting to steal a car. Officer Messimer also thought that Blount was considering breaking into a vehicle. As the officers began walking toward Blount, intending to confront him regarding his intentions, Blount got into the front passenger seat of a car that had driven into the parking lot and pulled away from the approaching officers to a remote, unoccupied area of the parking lot.

The officers began walking toward the vehicle, which was later determined to belong to Causey. As they got within 30 yards of the vehicle, Blount got out and ran out of the parking lot. The trial court noted, without deciding, that there was conflicting testimony as to whether or not prior to running to the hotel, Blount saw the police officers. In any event he moved away from the officers, and this precluded his being questioned. What is important in this context, however, is that it is undisputed that the officer thought Blount had seen him and such conclusion further supported his reasonable suspicion of criminal conduct by Blount and Causey. The officers did not pursue Blount because he was too far away from them to be caught. Causey had pulled into the parking lot, picked up Blount, and driven him to a remote area of the parking lot where he released him beyond the reach of the officers, then began to drive toward the parking lot exit. The officers, being suspicious of the conduct of Blount and Causey, stopped Causey's vehicle, being unable to stop Blount.

After the stop, Officer Bishop questioned Causey about his knowledge of his cohort, Blount, and, based on Causey's nervousness,

---

[1] *Parker v. State*, 233 Ga. App. 616, 617 (504 SE2d 774) (1998).
[2] *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

Officer Bishop requested permission to search the car. Causey agreed to let the officers search his car. Causey was carrying nun-chucks, a handgun, cocaine, marijuana, and $3,477 in his car and on his person. Causey was charged with trafficking in cocaine, possession of marijuana with intent to distribute, possession of a firearm during the commission of a crime, and two counts of carrying a concealed weapon and later filed his motion to suppress the above evidence. Following a hearing, the trial court granted Causey's motion to suppress this evidence. The trial court based its ruling on the isolated conduct of Causey and did not address the reasonableness of the officers' consideration of the conduct of Blount and Causey individually and jointly and thus failed to consider the totality of the circumstances. The totality of the circumstances authorized a second-tier stop based on the pre-stop conduct, without regard to the existence of contraband that was later found.

> At least three types of police-citizen encounters exist: [(1)] verbal communications involving no coercion or detention; [(2)] brief "stops" or "seizures" that require reasonable suspicion; and [(3)] "arrests," which can only be supported by probable cause. *Verhoeff v. State.*[3] A first-tier encounter never intrudes upon any constitutionally protected interest, since the purpose of the Fourth Amendment is not to eliminate all contact between police and citizens, but simply to prevent arbitrary and oppressive police interference with the privacy and personal security of individual citizens. *Verhoeff*, supra at 503. On the other hand, a second-tier encounter may violate the Fourth Amendment if the officer briefly "stops" or "seizes" a citizen without an articulable suspicion. Articulable suspicion requires a particularized and objective basis for suspecting that a citizen is involved in criminal activity. See *Painter v. State.*[4] Moreover, a "seizure" within the meaning of the Fourth Amendment only occurs when, in view of all the circumstances surrounding the incident, a reasonable person believes that he is not free to leave. *Moran v. State.*[5]

*Stokes v. State.*[6]

(a) Initially, the State argues that the stop of Causey's vehicle was a first-tier stop, i.e., involving no coercion or detention. See

---

[3] *Verhoeff v. State*, 184 Ga. App. 501, 503 (362 SE2d 85) (1987).
[4] *Painter v. State*, 227 Ga. App. 875, 877 (490 SE2d 544) (1997).
[5] *Moran v. State*, 170 Ga. App. 837, 840 (1) (318 SE2d 716) (1984).
[6] *Stokes v. State*, 238 Ga. App. 230, 231-232 (518 SE2d 447) (1999).

*Stokes,* supra. The State relies upon *Stokes,* wherein we held that an officer's approach and questioning of people in and around a *parked* car was a first-tier stop "neither requiring reasonable suspicion nor invoking Fourth Amendment protection for [the defendant]." Id. at 233. Significantly, in *Stokes,* we distinguished the situation where the officer orders or instructs a vehicle's occupant to roll down the window or open a car door, determining that such an action may equal "physical force or a show of authority sufficient to constitute a 'seizure.'" Id. Therefore, the present case is clearly distinguishable from our holding in *Stokes,* supra. Herein, Officer Bishop held out his hand and "yelled" for Causey to stop his moving vehicle. The State's argument that Officer Bishop's stop of Causey's moving vehicle was a first-tier stop is without merit. See *Peters v. State.*[7]

(b) The State next contends that, even if considered a second-tier stop, the stop of Causey's car was justified. We agree. Officer Bishop had a reasonable articulable suspicion of criminal activity by Blount and Causey and was justified in briefly detaining and questioning Causey.

The United States Supreme Court has discussed, at length, the elusive nature of what is deemed sufficient to authorize the police to stop and detain a citizen. See *United States v. Cortez.*[8] In *Cortez,* the Supreme Court determined that "the essence of all that has been written [about the definition of articulable reasons and founded suspicions] is that the totality of the circumstances — the whole picture — must be taken into account." Id. This totality of the circumstances test consists of two elements: (1) The determination must be based upon all the circumstances gathered from "objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers." Id. The trained police officer makes a determination from these data — this determination can be based upon "inferences and deductions that might well elude an untrained person." Id. In reaching such deductions, police officers are authorized to make common sense conclusions about human behavior. Id. Additionally, the evidence must be viewed from the perspective of what action a reasonable police officer would take. Id. See also *Freeland v. State,*[9] quoting *Ornelas v. United States.*[10] (2) The second element which must be present before a stop is permissible requires that during the process of analyzing the facts as described in the first element, a suspicion must arise "that the particular individual being stopped is engaged

[7] *Peters v. State,* 242 Ga. App. 816, 817 (531 SE2d 386) (2000).
[8] *United States v. Cortez,* 449 U. S. 411, 417-418 (101 SC 690, 66 LE2d 621) (1981).
[9] *Freeland v. State,* 223 Ga. App. 326 (1) (477 SE2d 633) (1996).
[10] *Ornelas v. United States,* 517 U. S. 690 (116 SC 1657, 134 LE2d 911) (1996).

in wrongdoing." *Cortez*, supra at 418.

With the totality of the circumstances test in mind we review the facts of the present case. For this purpose, we focus on the reasonableness of the stop, without regard to the presence of drugs which was ultimately established. The fact that contraband is in fact discovered will not support an otherwise invalid stop. *Postell v. State*.[11] Trained police officers testified they were aware of prior auto break-ins that occurred in the Dave & Buster's parking lot. There had been an auto break-in on the previous evening. With this knowledge, the officers saw an individual who reasonably appeared to be casing the cars in the parking lot. Officer Bishop testified inter alia:

> I saw him start walking in between cars, not as coming to [Dave & Buster's], but he went to an aisle of cars and was in and out in between cars. While doing this, occasionally he would stop, lean over, look in a vehicle. Then he'd stand up, look over his shoulders both directions. Since it was brought to my attention that there was a theft from a vehicle the night before, . . . I started believing that's what Mr. Blount was there for. At that point I started walking towards Mr. Blount. . . . Prior to my getting even close to Mr. Blount, a blue Toyota Celica pulled in the parking lot. . . . Mr. Blount got into the front passenger side of the vehicle, and [it] proceeded to . . . an unoccupied area of the parking lot. So . . . I haven't verified Mr. Blount's intentions for being in the parking lot, and I've got a new player in the game. . . . I started walking toward the vehicle. . . . As I got within . . . 30 yards . . . Mr. Blount exited the . . . vehicle, looked up, saw me and went into a dead run.

These circumstances viewed from the standpoint of an objectively reasonable police officer justified their suspicion that the parties, both Blount and Causey, were engaged in wrongdoing. See *United States v. Cortez*, supra.

> [C]ourts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists. Thus, the determination of reasonable suspicion must be based on common sense judgments and inferences about human behavior. . . . All of this conduct was by itself lawful, but it also suggested that the individuals were [engaged in crimi-

---

[11] *Postell v. State*, 264 Ga. 249 (443 SE2d 628) (1994).

nal activity]. *Terry* recognized that the officers could detain the individuals to resolve the ambiguity.

*Illinois v. Wardlow.*[12]

In the present case, the officers drew reasonable conclusions based upon their experience and the objective facts before them. Under the totality of the circumstances, it was reasonable to suspect that Blount was involved in an attempt to break into automobiles and that Causey was his accomplice in such activity. The fact that such actions occurred in an area where the officers had first-hand experience with car break-ins and that Causey picked up Blount, who had been acting suspiciously, and drove to a remote part of the parking lot away from the approaching officers was consistent with such activity. The fact that Officer Bishop believed Blount ran off after seeing him reasonably supported Bishop's suspicion. The fact that after Blount ran off, Causey then attempted to drive out of the parking lot after just having driven in supported Bishop's suspicion that he was Blount's accomplice. The evidence provides sufficient reasonable articulable suspicion to support a brief detention of Causey. Therefore, the trial court erred in granting Causey's motion to suppress.

### Case No. A00A1687

2. In Case No. A00A1687, the State appeals the trial court's order denying its complaint for forfeiture of $3,477 seized from Causey. The trial court based its order in the forfeiture case on its determination that the tangible property that was the subject of the forfeiture action was not obtained legally. However, because we held in Division 1 that the trial court erred in making that determination and in granting Causey's motion to suppress, we also find that the trial court erred in denying the State's forfeiture complaint. See OCGA § 16-13-49 (d) (2).

*Judgments reversed. Eldridge and Barnes, JJ., concur.*

DECIDED OCTOBER 31, 2000 —
RECONSIDERATION DENIED NOVEMBER 17, 2000 — ■

*Patrick H. Head, District Attorney, Maria B. Golick, Dana J. Nor-*

---

[12] *Illinois v. Wardlow,* 528 U. S. 119 (120 SC 673, 145 LE2d 570) (2000).

*man, William M. Clark, Assistant District Attorneys*, for appellants.
*Forrest K. Shealy*, for appellee.