## A11A1037. OGLESBY v. THE STATE.
(716 SE2d 742)

MILLER, Presiding Judge.

Following a stipulated bench trial, Perry Wayne Oglesby was convicted of trafficking in methamphetamine (OCGA § 16-13-31 (e)). On appeal,[1] Oglesby contends that the trial court erred in denying his motion to suppress evidence since it was seized during an illegal detention. We discern no error and affirm.

> When reviewing a trial court's decision on a motion to suppress, this Court's responsibility is to ensure that there was a substantial basis for the decision. The evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. Further, since the trial court sits as the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them.

(Citations and punctuation omitted.) *Brown v. State*, 301 Ga. App. 82, 82-83 (686 SE2d 793) (2009).

So viewed, the record evidence shows that on the afternoon of March 9, 2009, an officer with the Clayton County Police Department was patrolling in a residential area when he observed Oglesby emerge from behind a vacant private residence. The officer was aware that the residence had been vacant for a while, stolen vehicles had been parked at the residence on prior occasions, and a murder had occurred at a location directly behind the residence. The officer was also aware of prior reports of vandalism and thefts of appliances and copper from other vacant residences in the area. The officer made contact with Oglesby, suspecting that he may have been

---

[1] Following his conviction, Oglesby filed an untimely notice of appeal. As a result, his prior appeal was dismissed. Upon remittitur, Oglesby filed a motion for an out-of-time appeal, which the trial court granted. The instant appeal then ensued.

engaging in criminal activity at the residence.

Oglesby appeared to be very nervous, but he agreed to approach the officer's patrol car and answered the officer's questions. In response to the officer's inquiry, Oglesby informed the officer that he was coming from a nearby store, where he had purportedly purchased water, ice cream, and a sports nutrition drink. The officer noticed, however, that none of the described items were in Oglesby's possession. Oglesby engaged the officer in a rambling discussion, advising that he had previously spoken with the officer's commander and had been harassed by someone in a nearby apartment complex. During the conversation, the officer asked Oglesby whether he had any weapons in his possession. Oglesby responded that he did have a weapon and began to reach inside his back pocket. The officer stopped Oglesby from reaching into the pocket, and obtained Oglesby's consent to a pat-down search of his person. During the pat-down search, the officer located a knife in Oglesby's back pocket.

The officer then requested backup from other officers. As the officer continued the pat-down search, he felt an object in Oglesby's front pocket. The officer obtained Oglesby's consent to remove the object and discovered that it was approximately 45 grams of methamphetamine.

Oglesby was arrested and charged with trafficking in methamphetamine. He filed a pretrial motion to suppress the drug evidence. Following a hearing, the trial court denied the motion. Oglesby challenges the trial court's ruling on the motion, contending that the evidence was obtained during an illegal detention. We disagree.

There are three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause. In the first level, police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave. The second tier occurs when the officer actually conducts a brief investigative *Terry*[2] stop of the citizen. In this level, a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and

---

[2] See *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

objective basis for suspecting the persons are involved in criminal activity. In determining whether a police-citizen encounter constituted a seizure, a court must answer whether, considering all the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.

(Punctuation and footnotes omitted.) *Cutter v. State*, 274 Ga. App. 589, 591-592 (1) (617 SE2d 588) (2005).

In this case, the trial court found that Oglesby's encounter with the officer was of the first tier, involving no coercion or seizure. The trial court's finding was authorized. The evidence presented at the hearing established that Oglesby engaged in a consensual conversation with the officer. There was no evidence that Oglesby made any attempt to leave or that the officer physically prevented him from doing so. Likewise, there is no evidence that the officer threatened, commanded, or forced Oglesby to approach and speak with him. Based upon these circumstances, no seizure occurred and the officer was authorized to ask Oglesby a few questions during the consensual encounter without triggering Fourth Amendment scrutiny. See *Postell v. State*, 279 Ga. App. 275, 276-277 (1) (630 SE2d 867) (2006); *Cutter*, supra, 274 Ga. App. at 593-594 (1); *State v. McKinney*, 265 Ga. App. 322, 322-324 (593 SE2d 865) (2004).

Oglesby nevertheless argues that based upon the officer's own admission, a second-tier encounter occurred and thus, an articulable suspicion was required to justify his detention. In this regard, Oglesby points to the officer's affirmative responses to defense counsel's leading cross-examination questions, indicating that the officer "detained" him to ask some questions and that he was not free to leave because the officer was going to conduct an investigation. The officer's conflicting testimony on cross-examination, however, was not fully dispositive.

[W]hen analyzing whether a person has been unconstitutionally seized, we are not bound by the [investigating] officer's subjective belief. Rather, the touchstone of any Fourth Amendment analysis is a determination of whether an officer's conduct is reasonable based upon all of the objective facts.

(Citations and punctuation omitted.) *Johnson v. State*, 299 Ga. App. 474, 478 (682 SE2d 601) (2009). See also *Postell*, supra, 279 Ga. App. at 277 (1), n. 3 ("The fact that the officer, a nonlawyer, used the word 'stop' to describe his initial encounter with appellant does not

mandate a finding that the officer made a *Terry* stop."); *In the Interest of A. A.*, 265 Ga. App. 369, 372 (1) (593 SE2d 891) (2004) ("[T]he officer's subjective belief that he had authority to detain the juveniles is not controlling. The test is whether, in view of all the circumstances surrounding the incident, a reasonable person believes that he is not free to leave.") (citations and punctuation omitted). Moreover, the pertinent inquiry is based upon the objective facts known to the officer at the time of the encounter, not his post-hoc characterizations or opinions concerning those facts given at the suppression hearing. See *Cole v. State*, 254 Ga. App. 424, 426 (2) (562 SE2d 720) (2002). The officer's testimony describing the encounter and his exchange with Oglesby provided objective facts illustrating that the encounter was consensual, noncoercive, and of a nature that would not lead a reasonable person to believe that he was not free to leave. See *Postell*, supra, 279 Ga. App. at 276-277 (1).[3]

But even if we were to otherwise conclude that the encounter was a second-tier investigative stop, or escalated into such when the officer prevented Oglesby from reaching into his pocket, the evidence established that the officer had a reasonable articulable suspicion which justified Oglesby's detention. "During a second-tier encounter, a police officer may stop a person and briefly detain him or her if the officer has a particularized and objective basis for suspecting the person is involved in criminal activity." (Citation and punctuation omitted.) *Brown*, supra, 301 Ga. App. at 84-85. The determination of whether articulable suspicion exists must be based upon all the circumstances gathered from objective observations and the modes or patterns of operation of certain kinds of lawbreakers. See *State v. Causey*, 246 Ga. App. 829, 832 (1) (b) (540 SE2d 696) (2000).

> The trained police officer makes a determination . . . based upon inferences and deductions that might well elude an untrained person. In reaching such deductions, police officers are authorized to make common sense conclusions about human behavior. Additionally, the evidence must be viewed from the perspective of what action a reasonable police officer would take.

(Citations and punctuation omitted.) Id. at 832 (1) (b).

Here, Oglesby was observed coming from behind a private

---

[3] Compare *Thomas v. State*, 301 Ga. App. 198, 201 (1) (687 SE2d 203) (2009) (concluding that a second-tier encounter occurred based upon not only the arresting officer's unequivocal testimony that the defendant was not free to leave, but also evidence that the officer had physically blocked the defendant's path, demanded that the defendant submit to a pat-down search, and physically restrained the defendant).

residence that was not his own and was not a public location. The trained officer testified that he was aware that the private residence was vacant and that criminal activity had previously occurred at and directly behind the residence. The officer was also aware of prior reports in which vandalism and stolen appliances and copper had occurred at other vacant residences. Based upon the officer's observations and experience, he suspected that Oglesby's presence at the private residence may have been unauthorized and that he may have been engaging in criminal activity, such as criminal trespass, burglary, or vandalism at the vacant residence. The officer drew a reasonable conclusion based upon his experience and the objective facts before him, and the totality of the circumstances provided sufficient articulable suspicion to support Oglesby's brief detention. See *Bishop v. State*, 299 Ga. App. 241, 242-243 (682 SE2d 201) (2009) (concluding that officer had articulable suspicion justifying a stop when the officer observed the defendant leaving the driveway of a vacant lot where there had been prior incidents of illegal dumping, abandoned vehicles, and thefts; based upon the officer's knowledge and experience, she believed that the defendant may have been engaging in illegal dumping on the property); *McKinney*, supra, 265 Ga. App. at 324 (affirming the denial of the defendant's motion to suppress where the defendant and his companion were standing in the rear of a fenced private property posted against loitering and their responses to the officer's inquiry led the officer to believe that they were involved in criminal activity). When Oglesby further responded that he was carrying a knife and attempted to reach into his pocket to retrieve it, the officer was authorized to continue the detention and to perform the pat-down search for his safety. See *Lewis v. State*, 307 Ga. App. 593, 595 (705 SE2d 693) (2011) (concluding that the defendant's detention and pat-down search was authorized when he appeared extremely nervous, grabbed his pants pocket, and provided an implausible explanation for his presence on the property which had previously been robbed numerous times).

Since the evidence established that Oglesby was not unlawfully detained, the denial of his motion to suppress was proper.

*Judgment affirmed. Ellington, C. J., and Doyle, J., concur.*

DECIDED SEPTEMBER 8, 2011.

*Marc A. Pilgrim*, for appellant.

*Tracy Graham-Lawson, District Attorney, Billy J. Dixon, Assistant District Attorney*, for appellee.