**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 29, 2017**

# In the Court of Appeals of Georgia

A17A0461. DOUGHERTY v. THE STATE.

BARNES, Presiding Judge.

Following a bench trial, the trial court found Preston Wayne Dougherty guilty of two counts of misdemeanor obstruction of a law enforcement officer based on Dougherty's resistance to two officers who were attempting to arrest him. Dougherty now appeals, contending that there was insufficient evidence that he obstructed the officers while they were acting in the lawful discharge of their official duties. Upon our review, we affirm.

Construed in the light most favorable to the verdict, see *Bray v. State*, 330 Ga. App. 768, 771 (1) (768 SE2d 285) (2015), the evidence showed that at approximately 8:00 p.m. on March 19, 2016, a patrol officer with the Floyd County Police Department was turning onto Chulio Road when he was dispatched to an area of that road where someone was reportedly attempting to break into vehicles. It was still

light outside when the officer received the call from the 911 dispatcher. As the officer drove by the area of the road where he had been dispatched, he passed by a man, later identified as Dougherty, walking down the side of the road. The officer saw no one else in the area.

The officer decided to speak with Dougherty in light of the reported attempted car break-ins in that area of the road. The officer turned around his patrol car, activated his blue lights for safety reasons due to the traffic conditions, and parked his car on the road. After exiting his patrol car, the officer approached Dougherty, who continued walking down the opposite side of the road, and said, "Howdy, hey how are you doing sir?" According to the officer, Dougherty acted "completely weird" and "was not making sense" when the officer approached him and tried to speak with him, causing the officer to be concerned for his own and Dougherty's safety while standing on the road.

After briefly speaking with and observing Dougherty, the officer asked Dougherty to take his hands out of his pockets and then to come over in front of his patrol car away from traffic. The officer testified that Dougherty took his hands out of his pockets, but then kept "patting down his pockets[,] trying to continue to put his hands back in his pockets." The officer also testified that Dougherty would say

2

"okay" in response to the officer's requests for him to move out of the lane of traffic and come stand in front of the patrol car, but then would start walking down the road away from the officer. Dougherty also insisted that he was "fine," but then asked the officer if he could take him home.

After initially continuing to walk down the road, Dougherty followed the officer over to the front of the patrol car and stood there with his hands out of his pockets. Dougherty told the officer his name, but when the officer inquired where he lived, Dougherty responded "right up here" and could not give an address. The officer asked Dougherty for identification and tried to continue questioning Dougherty, but Dougherty was unresponsive to many of his questions, tried to put his hands back in his pockets, and again tried to walk away from the officer while saying "okay."

The officer had Dougherty lean against the bar on the front of his patrol car and conducted a pat-down search for weapons, and Dougherty consented to a search of his pockets. When the officer searched one of Dougherty's pockets, he felt a needle. When the officer felt the needle, Dougherty took one of his hands off of the police car and swung it in the air while saying "I'm sorry." The officer attempted to place Dougherty's arm behind his back to handcuff and arrest him, but Dougherty tried to

pull his arm away from the officer, and a struggle ensued during which the officer attempted to take Dougherty to the ground and subdue him.

The officer repeatedly ordered Dougherty to stop resisting and to put his hands behind his back so that he could be handcuffed, but Dougherty did not follow the commands even while saying "okay" several more times. The officer tried to physically subdue Dougherty, but Dougherty continued struggling with the officer and, according to the officer, did not appear to feel any pain. During the struggle, the officer's body camera fell off, and Dougherty grabbed it and held it tightly in his hand.

A second patrol officer arrived on the scene and deployed his taser on Dougherty when he would not stop resisting the officers, but Dougherty continued to disobey both officers' commands to put his hands behind his back so that he could be handcuffed. The officers ultimately were able to subdue Dougherty and handcuff him, but only after deploying the taser a second time.

Dougherty was indicted on two charges of felony obstruction of a law enforcement officer and one count of battery. Dougherty elected to be tried in a bench trial, where the patrol officer who first responded to the scene (the "first officer")

testified to his encounter with Dougherty as summarized above. The second patrol officer who arrived on the scene did not testify.

The State also introduced into evidence and played for the trial court an audio-video recording from a camera mounted in the front of the first officer's patrol car (the "dash-cam recording"). The first officer's initial interaction with Dougherty on the road was captured only on the audio portion of the dash-cam recording, and some of Dougherty's verbal responses to the officer are difficult to hear on it. The police encounter with Dougherty from the point when he stepped in front of the first officer's patrol car until he was subdued and arrested was captured on both the video and audio portion of the dash-cam recording.

Following the first officer's testimony and the playing of the dash-cam recording, the State rested. Dougherty elected not to testify or call any defense witnesses.

After hearing the first officer's testimony and reviewing the dash-cam recording, the trial court acquitted Dougherty of felony obstruction and battery, but found him guilty of two counts of the lesser included offense of misdemeanor obstruction of a law enforcement officer. The trial court found that when the first officer initially approached Dougherty on the road, it was a first-tier consensual

encounter for Fourth Amendment purposes, but that the officer escalated the encounter to a second-tier investigatory detention "very fast." The trial court further found that "at that point there was clearly something wrong with Mr. Dougherty" and that, consequently, the first officer had reasonable suspicion, and was acting in the lawful discharge of his official duties, in initially detaining Dougherty for "at least, if nothing else, [being] a pedestrian under the influence of something." According to the trial court, "[a] person that's walking down Chulio Road in that kind of shape is either going to get [him]self killed or someone else." The trial court further found that Dougherty unlawfully resisted both officers' subsequent efforts to handcuff and arrest him after his initial detention, "given his state of inebriation of whatever it was he was under the influence of," and that his resistance to his arrest supported his convictions for misdemeanor obstruction.

Dougherty now appeals, contending that there was insufficient evidence to convict him of misdemeanor obstruction because the officers were not acting in the lawful discharge of their official duties, thereby entitling him to resist his arrest. We disagree.

> On appeal from a bench trial resulting in a criminal conviction, we view all evidence in the light most favorable to the trial court's verdict,

6

and the defendant no longer enjoys the presumption of innocence. We do not re-weigh testimony, determine witness credibility, or address assertions of conflicting evidence; our role is to determine whether the evidence presented is sufficient for a rational trier of fact to find guilt beyond a reasonable doubt.

(Citation and punctuation omitted.) *Bray*, 330 Ga. App. at 771-772 (1).[1]

Mindful of the standard of review, we turn to Georgia law pertaining to misdemeanor obstruction. OCGA § 16-10-24 (a) provides in relevant part that "a person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor." Proof that an officer was acting in the lawful discharge of his official duties thus is an essential statutory element of the offense. *West v. State*, 296 Ga. App. 58, 60 (2) (673 SE2d 558) (2009); *Overand v. State*, 240 Ga. App. 682, 682-683 (1) (523 SE2d 610) (1999).

---

[1] We conduct a de novo review of factual findings when the controlling facts are clearly and completely discernible from a video recording. *Capellan v. State*, 316 Ga. App. 467, 467 (729 SE2d 602) (2012). But where, as here, some of the controlling facts are not fully captured in the recording, we defer to the trial court's findings regarding those facts. See *State v. Chulpayev*, 296 Ga. 764, 771 (2), n. 5 (770 SE2d 808) (2015); *State v. Hall*, 339 Ga. App. 237, 244-245 (793 SE2d 522) (2016).

7

Whether an officer was acting in the lawful discharge of his official duties often turns on the type of encounter between the officer and a citizen. Under the Fourth Amendment to the United States Constitution, there are three tiers of police-citizen encounters:

> First-tier encounters are consensual communications between police and citizens and involve no coercion or detention; second-tier encounters, which must be supported by reasonable suspicion, are brief stops done for the purpose of investigating suspected criminal activity; and third-tier encounters are actual or de facto arrests and, accordingly, must be supported by probable cause.

(Citation and footnote omitted.) *Thomas v. State*, 301 Ga. App. 198, 200 (1) (687 SE2d 203) (2009). "A police officer is not discharging his lawful duty when he arrests an individual without reasonable or probable cause," or when he conducts a brief investigatory detention of an individual "without a particularized and objective basis for suspecting criminal activity." (Citations and punctuation omitted.) *In the Interest of J. T.*, 239 Ga. App. 756, 759 (521 SE2d 862) (1999). See *Curtis v. State*, 285 Ga. App. 298, 300 (1) (a) (645 SE2d 705) (2007); *Wynn v. State*, 236 Ga. App. 98, 99 (2) (511 SE2d 201) (1999).

In his brief on appeal, Dougherty argues that the first officer immediately escalated their encounter to a second-tier investigatory detention when he activated his blue lights, exited the patrol car, and required Dougherty to remove his hands from his pockets and stand in front of the patrol car. According to Dougherty, the officer lacked reasonable suspicion to detain him at that point because the officer was relying on a vague 911 dispatch that someone had been trying to break into cars in the area, and Dougherty at most exhibited "furtive" behavior when initially approached by the officer. Dougherty further maintains that because the first officer initially detained him without reasonable suspicion of any criminal activity, the officer was not acting in the lawful discharge of his official duties from that point onward, rendering unlawful the officers' subsequent efforts to handcuff and arrest him. Consequently, Dougherty contends that he was entitled to resist his detention "from the beginning" and to continue resisting throughout the police encounter, including when both officers sought to handcuff and arrest him. We are unpersuaded.

As an initial matter, we conclude that there was evidence supporting the trial court's determination that there was some interaction between Dougherty and the first officer on the road, albeit very brief, before the officer escalated the encounter to a second-tier investigatory detention. It is well-established that "'a seizure does not

occur simply because a police officer approaches an individual and asks a few questions.'" *State v. Westmoreland*, 204 Ga. App. 312, 313 (1) (418 SE2d 822) (1992), quoting *Florida v. Bostick*, 501 U.S. 429, 434 (II) (111 SCt 2382, 115 LE2d 389) (1991). Rather, an encounter escalates from a first-tier consensual interaction to a second-tier investigatory detention only when the individual is "seized" by the officer, i.e., "'[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty'" of the individual. *State v. Walker*, 295 Ga. 888, 890 (764 SE2d 804) (2014), quoting *Terry v. Ohio*, 392 U.S. 1, 19 (II), n. 16 (88 SCt 1868, 20 LE2d 889) (1968).

In the present case, the audio captured on the dash-cam recording reflects that the first officer spoke briefly with Dougherty before having Dougherty remove his hands from his pockets and stand in front of the patrol car. Thus, there was evidence of a short gap in time between when the officer initially observed and interacted with Dougherty and when the officer escalated the encounter to a second-tier investigatory detention. See *Durden v. State*, 320 Ga. App. 218, 220 (1) (739 SE2d 676) (2013) (encounter escalated to second-tier investigatory detention when suspect stopped and removed hands from his pockets at the officer's command); *Walker v. State*, 299 Ga. App. 788, 790 (1) (683 SE2d 867) (2009) (encounter became second-tier

10

investigatory detention when suspect came back and sat on pavement at the officer's direction).[2] The operative question, therefore, is whether there was at least some evidence that the officer had reasonable suspicion to quickly escalate the encounter to an investigatory detention based on his brief, initial observation and interaction with Dougherty on the roadway. Construing the evidence in the light most favorable to the trial court's ruling, we answer that question in the affirmative.

To meet the reasonable suspicion standard for conducting a second-tier investigatory detention, "the police must have, under the totality of the circumstances, a particularized and objective basis for suspecting [that a] person is involved in criminal activity." (Citation and punctuation omitted.) *Walker v. State*, 314 Ga. App. 67, 70 (1) (722 SE2d 887) (2012). "This suspicion need not meet the standard of probable cause, but must be more than mere caprice or a hunch or an inclination. A

---

[2] Before approaching Dougherty on foot and speaking with him, the first officer parked his patrol car in the opposite lane of traffic with the blue lights activated. The officer testified that he activated the blue lights "for safety reasons" because of the "heavy traffic," and that Dougherty continued walking down the road at that point. In light of the officer's testimony, the trial court was entitled to find that the activation of the blue lights on the patrol car did not, standing alone, escalate the interaction to a second-tier investigatory detention. See *Cash v. State*, 337 Ga. App. 511, 514-515 (2) (786 SE2d 560) (2016); *Darwicki v. State*, 291 Ga. App. 239, 240 (1) (661 SE2d 859) (2008).

founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing." (Citation and punctuation omitted.) *Gonzalez v. State*, 334 Ga. App. 706, 711 (2) (780 SE2d 383) (2015). "[T]he determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior" rather than on scientific certainty. *Illinois v. Wardlow*, 528 U.S. 119, 125 (120 SCt 673, 145 LE2d 570) (2000).

Pretermitting whether the first officer had reasonable suspicion based on the information supplied by the 911 dispatcher about the attempted car break-ins in the area, we conclude that there was evidence that the officer had reasonable suspicion, based on his initial observation and interaction with Dougherty, to believe that Dougherty was a pedestrian under the influence and to detain him on that ground. The trial court found that Dougherty "clearly" was "a pedestrian under the influence of something" and in a "state of inebriation" while walking down the road, and the dash-cam recording supports the trial court's finding. The trial court's finding was further supported by the first officer's testimony that when he first approached and tried to speak with Dougherty as he was walking down the heavily traveled road at 8 p.m., Dougherty was acting "completely weird" and "was not making sense."

"A person who is under the influence of intoxicating liquor or any drug to a degree which renders him a hazard shall not walk or be upon any roadway or the shoulder of any roadway." OCGA § 40-6-95. In light of the officer's testimony combined with the dash-cam recording, there was evidence from which the trial court could find that the officer, upon first interacting with Dougherty, developed reasonable suspicion to believe that Dougherty was a pedestrian under the influence and to quickly escalate the encounter to a second-tier detention on that basis. See OCGA § 40-6-95; *Mack v. State*, 305 Ga. App. 697, 698 (1) (700 SE2d 685) (2010) (officer had reasonable suspicion to believe that pedestrian who was about to walk down the street was under the influence of alcohol and to detain him on that ground); *Zeeman v. State*, 249 Ga. App. 625, 627-628 (1) (549 SE2d 442) (2001) (even if officers lacked reasonable suspicion to detain the defendant for involvement in a drug transaction, officers could detain him on the basis that he appeared to be under the influence and was about to drive).

While the officer did not specifically testify that one of his reasons for detaining Dougherty was his apparent intoxicated state while walking down the road, an "officer's subjective motivation is irrelevant" in determining whether reasonable suspicion exists. (Citation, punctuation, and emphasis omitted.) *Brigham City v.*

13

*Stuart*, 547 U.S. 398, 404 (II) (126 SCt 1943, 164 LE2d 650) (2006). Rather, the detention is lawful "as long as the circumstances, viewed objectively," support a finding of reasonable suspicion, as was true in this case, based on Dougherty's demeanor, words, and conduct as described in the officer's testimony and as shown on the dash-cam recording. Id.

For these reasons, the trial court was entitled to find that the first officer had reasonable suspicion and was acting in the lawful discharge of his official duties in escalating the encounter to a second-tier investigatory detention. Dougherty's argument that an illegal initial detention rendered the rest of his detention unlawful and justified his continued resistance therefore is unpersuasive, and we affirm his convictions for misdemeanor obstruction.

*Judgment affirmed. McMillian and Mercier, JJ., concur.*